CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 12 2017

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DOMINIQUE HERMAN ADAMS, | ) | CASE NO. 7:16CV00445 |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| LESLIE J. FLEMING, | ) | By: Hon. Michael F. Urbanski |
|     Respondent. | ) | Chief United States District Judge |

Dominique Herman Adams, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of a Wallens Ridge State Prison disciplinary hearing, alleging that he was deprived of liberty interests without due process. Respondent filed a motion to dismiss Adams' § 2254 petition, and Adams responded, making the matter ripe for disposition. After review of the record, the court concludes that Adams' petition is procedurally defaulted, time-barred, partially not cognizable on federal habeas review, and ultimately without merit, requiring the motion to dismiss to be granted.

### I. Background

On May 23, 2014 and June 3, 2014, Wallens Ridge State Prison sentenced Adams to segregation and a partial loss of good-time credits after finding him guilty of fighting, aggravated assault, and malicious wounding/causing bodily injury to canines. The warden denied his appeal on June 26, 2014. On September 21, 2016, Adams filed the current petition, alleging that the disciplinary hearing that sentenced him to segregation violated his constitutional rights. Shortly thereafter, the court summarily dismissed the petition without

prejudice, because Adams' claims did not impact the length of his incarceration. Vacated Mem. Op. Adams v. Fleming, No. 7:16CV00445, 1-2 (W.D. Va. Sep. 29, 2016), ECF No. 2.[1]

On October 19, 2016, Adams moved to amend, which the court granted. Thereafter, the respondent moved to dismiss. Adams responded to the motion, and then moved to amend his petition for a second time. The respondent filed a motion opposing the amendment as untimely and futile. Adams responded to that motion, asking the court to construe his second motion to amend as a "Production for Discovery Motion" pursuant to Rule 34 of the Federal Rules of Civil Procedure.

## II. Claim

Adams raises one claim:

1. Adams was denied due process of law at his disciplinary proceedings, specifically when the Institutional Disciplinary Hearing Officer did not give him access to security surveillance videos that contained exculpatory evidence, in violation of Brady v. Maryland, 373 U.S. 83 (1963).

## III. Incognizable Issue

As part of his claim, Adams asserts that the unconstitutional withholding of evidence resulted in a demotion in class level that affected his ability to earn good-time credits in the future. At the threshold, Adams' argument is not cognizable on federal habeas review:

> [changes] in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges—matters which every prisoner can anticipate are contemplated by his original sentence to prison—are necessarily functions of

---

[1] The court's initial dismissal relied upon Wilkinson v. Dotson, 544 U.S. 74, 81 (2005) (holding that habeas courts must "focus[] on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody").

2

prisoner management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively.

DeBlasio v. Johnson, 128 F. Supp. 2d 315, 328-29 (E.D. Va. 2000), aff'd 13 Fed. App'x 96 (4th Cir. 2001). More specifically, "inmates do not have a protected liberty interest in earning a specific rate of good conduct time. The effect of a classification change on the ability to earn good-time credit is too speculative to constitute a deprivation of a protected liberty interest." Hammer v. Pearson, 2015 WL 467536, at *1 (W.D. Va. Feb. 3, 2015) (internal citation removed) (citing DeBlasio, 128 F. Supp. 2d at 329). Therefore, classification level and future good-credit acquisition rate are not cognizable on habeas review.

## IV. Standards of Review

### A. Exhaustion and Procedural Default

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)). To meet the exhaustion requirement, a petitioner "must have presented to the state court both the operative facts and the controlling legal principles." Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (internal quotation marks and citation omitted). "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker, 220 F.3d at 288 (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)).

3

"If a claim is defaulted, then petitioner must fail on that claim unless he can show that cause and prejudice or a fundamental miscarriage of justice might excuse his default." Bell v. True, 413 F. Supp. 2d 657, 676 (W.D. Va. 2006) (citing Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998)). The "cause" prong requires a petitioner to demonstrate that there were "objective factors," external to his defense, which impeded him from raising his claim at an earlier stage. Murray v. Carrier, 477 U.S. 478, 488 (1986). The "prejudice" prong requires a petitioner to show that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of a constitutional magnitude. Id. Meanwhile, the fundamental miscarriage of justice exception requires a petitioner to prove his actual innocence.

### B. *Statute of Limitations*

Under the Anti-terrorism Effective Death Penalty Act (AEDPA), a one-year period of limitation for federal habeas corpus runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Under § 2244, a petitioner can "toll" the federal habeas statute of limitation in two ways: statutory tolling and equitable tolling. Statutory tolling occurs when a petitioner files a

state habeas petition within the federal statute of limitation period. The federal habeas statute of limitation is then tolled for the duration of the state habeas proceeding. 28 U.S.C. § 2244(d)(2). Equitable tolling occurs only if a petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544, U.S. 408, 418 (2005)). Lastly, a proper showing of actual innocence can also excuse the time-bar.

### C. Actual Innocence

Under McQuiggin v. Perkins, 133 S. Ct. 1924 (2013) and Schlup v. Delo, 513 U.S. 298 (1995), federal habeas courts must review otherwise defaulted and/or time-barred petitions if the petitioner makes a colorable claim of actual innocence. However, a credible actual innocence claim

> requires petitioner to support his allegations of constitutional error with *new reliable evidence*—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup, 513 U.S. at 324 (emphasis added). Further, "[a] petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 538 (2006).

### D. Merits

Prior to revoking vested good time credits, the Due Process Clause of the Fourteenth Amendment entitles a petitioner to the following process: (1) an impartial tribunal; (2)

5

written notice of the charges prior to the hearing; (3) an opportunity to call witnesses and present documentary evidence; (4) aid from a fellow inmate or staff representative if the issues are complex; and (5) a written statement by the fact finder describing the evidence relied upon and the reasons for taking disciplinary action. Coles v. Washington, 2012 WL 443543, at *2 (E.D. Va. Feb. 10, 2012) (citing Wolff v. McDonnell, 418 U.S. 539, 563-71 (1974)).

To establish a Brady violation, "a convicted defendant must make each of three showings: (1) the evidence at issue is 'favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) the State suppressed the evidence, 'either willfully or inadvertently'; and (3) 'prejudice . . . ensued.'" Skinner v. Switzer, 562 U.S. 521, 536 (2011) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).

V. Discussion

*A. Procedural Default*

Adams never presented his claim in the Supreme Court of Virginia, and over two years have passed since the disciplinary hearing and subsequent sentencing. Therefore, the claim could not now be brought to the state court under Virginia's statute of limitations, Va. Code § 8.01-654(A)(2). Therefore, Adams' claim is exhausted and defaulted under Baker.

Adams argues that his default is excused because Va. Code § 8.01-654 "does not have a remedy/exception for prisoners to challenge unconstitutional decisions by an institutional disciplinary hearings officer during a[n] institutional disciplinary hearing in a prison setting." Pet'r's Pet. 5, ECF No. 1. However, Virginia's habeas corpus jurisdiction includes "cases in which an order entered in the petitioner's favor . . . will, as a matter of law and standing

alone, directly impact the duration of a petitioner's confinement." Carroll v. Johnson, 278 Va. 683, 693, 685 S.E.2d 647, 652 (2009). Thus, a petitioner's challenge to the unconstitutional loss of vested time-credit is cognizable on Virginia state habeas review, because the petitioner is "detained without lawful authority." Id.

Therefore, Adams' claim is procedurally defaulted, and he fails to demonstrate cause and prejudice.

### B. *Statute of Limitations*

Wallens Ridge State Prison found Adams guilty and the warden denied his appeal in 2014. Adams did not file the present action until 2016. Further, Adams is not eligible for tolling: he never filed a state habeas petition, he does not satisfy any of the exceptional circumstances under § 2244(d)(1),[2] and he has not offered proof that he pursued his rights diligently or that any circumstance prevented his timely filing.

Therefore, Adams' petition is time-barred.

### C. *Actual Innocence*

Adams fails to make a colorable claim of actual innocence that would excuse his petition's default and time-bar. Instead of offering reliable scientific reports, affidavits, or other inherently credible evidence, he makes conclusory statements such as: "he is actually innocent of fighting with any person, malicious wounding/cause bodily injury to canines/DOC animals, and aggravated assault upon a non offender." Pet'r's Pet. 15, ECF No. 1. However, his many self-serving declarations do not form the basis of a fundamental

---

[2] Adams alleges that the Commonwealth of Virginia created an unconstitutional impediment by withholding exculpatory evidence favorable to him. However, whether the Commonwealth and/or prison officials withheld evidence is irrelevant to Adams' ability to file a federal habeas petition, and is thus not an actual impediment that prevented his filing under § 2254(d)(1)(B).

7

miscarriage of justice.[3] "To permit such self-serving testimony to suffice would set the bar 'so low that virtually every [actual innocence] claimant would pass through it." Kuenzel v. Allen, 800 F. Supp. 2d 1162, 1181 (N.D. Ala. 2009) (quoting Hubbard v. Pinchak, 378 F.3d 333, 340 (3rd Cir. 2004)).

Further, Adams' timestamped version of events does not significantly differ from the statements and findings of: the correctional officers, the reviewing prison authorities, and United States Magistrate Judge Sargent.[4] Adams readily admits that an altercation with another inmate occurred, correctional officers responded, and he incurred injuries during the incident. He also acknowledges that the picture was unclear and the cameras malfunctioned at several points. Pl.'s Mot. for Recons. 1-9, Adams v. Horne, 7:15CV00168 (W.D. Va. Apr. 5, 2017), ECF No. 83. Regardless of issues with the videos, Adams has not proffered new and reliable evidence showing that he is innocent of: (1) striking Omen (the canine), (2) assaulting K-9 Officer Horne, and (3) fighting with any person.

Regarding the charge of striking Omen, Adams refused to acknowledge that he had harmed the dog, but he did testify that, "as Omen jerked and dragged [Adams] from his right side, his left arm involuntarily swung towards Omen." Findings of Fact and Conclusions of Law 2, Adams v. Horne, No. 7:15CV00168 (Jun. 9, 2016), ECF No. 53.

Horne, however, testified that "Omen was injured by Adams striking him." Id. at 7. After Horne received medical attention for his own injury caused by the scuffle with Adams, he then "took Omen to the veterinarian, who documented that Omen had swelling in the

---

[3] Hodnett v. Slayton, 343 F. Supp. 1142, 1145 (W.D. Va. 1972) (A "bare allegation" of a constitutional violation cannot be the basis of habeas relief.).

[4] Judge Sargent presided over Adams' related 42 U.S.C. § 1983 proceeding. Adams v. Horne, No. 7:15CV00168 (W.D. Va. Jun. 9, 2016).

8

left maxillary[5] area." Horne further testified that: "he saw Adams hit Omen in this area several times while Omen had ahold of [Adams]." Id. Lastly, Horne said that he had "told Adams twice to stop hitting the dog." Id. at 5.

Regarding the charge of assaulting a correctional officer, Adams claims that he was not facing Horne and Omen, and therefore could not have assaulted them. However, the hearing officer found that, according to the video, Adams was facing Horne and Omen when Omen initially engaged. Moreover, Adams' injuries occurred to the front part of his body, which would not have occurred had he been facing away from Horne and Omen. Id. at 8. Horne stated that Adams continued to resist and struggle even after Horne took Adams to the ground, and that "Adams scratched Horne on his left forearm[6] and attempted to push away." Ans. 4, Adams v. Horne, No. 7:15CV00168 (W.D. Va. Jul 6, 2015), ECF No. 18.

Regarding the charge of fighting any person, Horne testified that "Collins ran from Adams and Adams pursued Collins across the C Yard. Adams said that the video shows that he caught up to Collins and started fighting again with him . . . just before it shows Omen engag[ing] Adams." Findings of Fact and Conclusions of Law 7, Adams v. Horne, No. 7:15CV00168 (Jun. 9, 2016), ECF No. 53. Lastly, Officer Rollins, who was also responding to the fight, "specifically testified that when he approached the inmates, he saw Adams swinging at Collins." Id. at 8.

---

[5] The maxilla is the upper jawbone area, near the nose and eyes.

[6] "After all of the offenders were secured, Horne reported to medical and received treatment for the injuries to his arm." Horne's aff. 3, Adams v. Horne, No. 7:15CV00168 (W.D. Va. Jul. 8, 2015), ECF No. 18.

In support of his argument, Adams simply states that the surveillance videos prove his innocence. However, he has not alleged any new and reliable evidence to dispute the correctional officers' affidavits and testimony, or the findings of the initial disciplinary committee, the warden, and Judge Sargent. He has not shown that Horne or Omen's injuries were caused by someone or something else or undermined the summaries and testimony regarding the surveillance videos with reliable contrary evidence. Actual innocence requires proof of *factual innocence*; Adams' self-serving statements are not proper evidence under Schlup.

Adams fails to allege sufficient new and reliable facts to make a colorable claim of actual innocence to excuse his petition's procedural default and untimeliness; therefore, his claim is barred from federal review.

*D. Merits*

Regardless of his claim's procedural default and time-bar, the court will briefly discuss the merits.

The crux of Adams' § 2254 petition lies in the third prong of Wolff's due process requirements: the opportunity to call witnesses and present documentary evidence.[7] First, although Adams requested witnesses, he did not submit the proper form to the Hearings Officer; therefore, his inability to present witnesses resulted directly from his failure to follow procedure. Second, he requested documentary evidence, but video tapes of internal surveillance footage, showing camera locations, blind spots, and correctional officer

---

[7] As to requirement one, Adams does not offer any proof that the tribunal was not impartial. "Bare allegations" of constitutional error are not sufficient grounds for habeas relief; the petitioner must proffer evidence to support his claims. Nickerson v. Lee, 971 F.2d 1125, 1135 (4th Cir. 1992). Regardless, the warden reviewed the initial hearing and stated his reasons for agreeing with the decision. Adams does not allege or factually support any violations regarding requirements two, four, or five; therefore, the court will not address them.

response strategy often represent major security concerns for prison officials. Thus, the disciplinary committee did not violate Adams' due process rights in denying access to the tapes; the committee determined that the surveillance tapes would not exculpate Adams; instead, the videos supported a finding that he was guilty. The disciplinary hearing officer even stated: "according to the security camera, K-9 Handler Horne's testimony was very accurate."[8] Disciplinary Hr'g Appeal 4, ECF No. 44.

Therefore, Adams' claim fails because he has not demonstrated that his due process or Brady rights were violated.

## VI. Pending Motions

Adams has filed, or attempted to file,[9] motions to authorize and/or compel discovery under the Federal Rules of Civil Procedure Rule 34 and Rule 37.

Adams seeks discovery of the May 20, 2014 surveillance videos in the C Yard. In his motion, he relies upon Bracy v. Gramley, 520 U.S. 899 (1997), stating that he will be able to demonstrate that he is entitled to relief if the facts are fully developed. However, Adams has already seen the surveillance tapes in his related § 1983 proceeding and he has not alleged specific facts demonstrating that the videos are exculpatory. His conclusory statements and time-stamped statement of events are not sufficient evidence to grant a discovery motion of surveillance footage that (1) Adams has already had access to in his related § 1983 action,

---

[8] The hearing officer confirmed that the surveillance footage depicted Adams swinging at the dog, but the image quality was not good enough to determine which part of the animal was struck. Disciplinary Hr'g Appeal 7, ECF No. 44. "In addition, [the hearing officer] said that the offender may have been in a situation where he was not aware of what was happening around him because the offender had gone into survival mode. Offender Adams agreed with that statement." Id.

[9] Adams initially filed a motion to amend, but he later clarified that he only wanted discovery and does not wish to amend his petition. Regardless, if construed as a motion to amend, the motion would have been denied as untimely, unnecessary, and duplicative.

and (2) that has already been determined to not be exculpatory. Therefore, the court denies Adams' motion.

## VII.

For the reasons stated, the court **GRANTS** the motion to dismiss. Adams' petition is procedurally defaulted, time-barred, partially incognizable on habeas review, and ultimately without merit. Adams' pending motions are **DENIED**. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to Adams and to counsel of record for Respondent. Further, finding that petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability is **DENIED**.

ENTER: This 12 day of July, 2017.

/s/ Michael F. Urbanski
Chief United States District Judge